UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY REFERMAT,

                              Plaintiff,

vs.                                                             Civil No. : 14-CV-0712

LANCASTER CENTRAL SCHOOL SYSTEM,

                              Defendant,

## DECLARATION IN SUPPORT OF
## THE DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

STATE OF NEW YORK    )
                                      ) SS.:
COUNTY OF ERIE        )

    **I, BRENDAN P. KELLEHER**, make the following Declaration under the penalties of perjury and, pursuant to 28 USC §1746, declare the following to be true and correct:

    1.    I am a member of the Harris Beach, PLLC law firm, attorneys for the Defendant in the above-captioned action. I submit this Declaration in support of the Defendant's motion for summary judgment under Federal Rule of Civil Procedure 56.

*Pleadings:*

2. The Plaintiff commenced this action with the filing of a Complaint on or about August 27, 2014.[1] The Complaint alleged that the Defendant unlawfully discriminated against the Plaintiff based upon her age and gender, and retaliated against her for making complaints of discrimination.

3. The Defendant Answered the Plaintiff's Complaint, denying the Plaintiff's allegations and asserting numerous defenses.[2]

4. On or about October 3, 2016, the Plaintiff filed an Amended Verified Complaint.[3] The Amended Complaint alleges that the Defendant intentionally discriminated against the Plaintiff based upon her age and gender, and then retaliated against her for making complaints of discrimination. The Amended Complaint also contained allegations that the Plaintiff was forced to retire from her employment with the Defendant School District in April 2015.

5. The Defendant served an Answer to the Amended Complaint on or about January 10, 2016, denying the Plaintiff's claims and asserting numerous defenses.[4]

*Discovery Completed:*

6. The parties engaged in extensive discovery, including the taking of the depositions of the Plaintiff, Mr. Robert Mowry and Ms. Jamie Phillips. All discovery has now been completed or waived, and the matter is ripe for the Court's consideration of the Defendant's

---

[1] See, Exhibit A.
[2] See, Exhibit B.
[3] See, Exhibit C.
[4] See, Exhibit D.

summary judgment motion. The Defendant requests that the Court grant it summary judgment on all of the Plaintiff's claims and dismiss the Complaint. The Defendant's motion should be granted based on the facts undisputed below and in the Defendant's Statement of Uncontested Facts.

***Plaintiff's Claims:***

7.      The Plaintiff, a retired Senior Clerk Typist with the Defendant School District who never suffered any adverse employment action, makes three employment related claims against the Defendant: (1) that she was discriminated against based upon her age because other younger employees were allegedly given preferential treatment; (2) that she was discriminated against based upon her gender in how her supervisor, Mr. Mowry, treated her; and (3) that she was retaliated against for making complaints of discrimination to the District and for filing a single Charge with the Equal Employment Opportunity Commission in June 2013.[5]

***The Plaintiff Filed Only a Single EEOC Charge in June 2013:***

8.      While the Plaintiff's Amended Complaint contains allegations that occurred as recently as 2015, it is undisputed that the Plaintiff filed only one EEOC Charge against the Defendant -- and that the single Charge was dated June 27, **2013**.[6]

9.      The Amended Complaint contains numerous allegations that allegedly occurred *after* the Plaintiff's June 27, 2013 EEOC Charge. The allegations contained in paragraphs 39

---

[5] See, Exhibit C.
[6] See, Exhibit E age page 46 (lines 13-23), 47 (lines 4-6) F.

3

through 53 of the Amended Complaint all contain dates indicating the allegations occurred after the Plaintiff filed her only EEOC Charge against the Defendant.[7]

10.     Therefore, it is undisputed that many of the Plaintiff's allegations – including her constructive discharge allegations – were never raised before the EEOC.

***The Defendant Had in Place Anti-Discrimination and Anti-Retaliation Policies:***

11.     At the time of the Plaintiff's allegations, the Defendant had in place employment policies prohibiting unlawful discrimination and retaliation, and requiring an employee to file an internal complaint if she felt she was subjected to unlawful discrimination or retaliation. The Defendant's employees, including the Plaintiff and Mr. Mowry, were also trained regarding the Defendant's anti-harassment and anti-discrimination policies and procedures regularly.[8]

***The Plaintiff's Employment in the Defendant's Transportation Department:***

12.     Prior to the Plaintiff beginning work in the Defendant's Transportation Department, she was interviewed and recommended for the Senior Clerk Typist position by Mr. Robert Mowry, the District's Transportation Supervisor. Mr. Mowry is the same person the Plaintiff now alleges discriminated against her because of her gender and age, and then retaliated against her.[9]

13.     After Mr. Mowry recommended her for the position, the Plaintiff became the ***only*** Senior Clerk Typist – a Civil Service position – in the District's Transportation Department.[10]

---

[7] See, Exhibit C at paragraphs 39-53.
[8] See, Exhibits G-I.
[9] See, Exhibit E at page 29 (lines 6-21).
[10] See, Exhibit E at pages 33 (lines 16-23) and 34 (lines 3-7).

4

14. It is undisputed that the Plaintiff, as a member of an employee union, had the terms and conditions of her employment governed by the collective bargaining agreement between her union and the Defendant School District. That agreement contained procedures which the District would have had to follow if it desired to discipline the Plaintiff.[11]

15. It is also undisputed that the Plaintiff *never* was suspended or terminated from her employment with the Defendant at any point prior to her retirement from the Defendant in April 2015. The Plaintiff admitted these facts during her deposition testimony:

> Q: Were you ever suspended from work at all?
> A: No.[12]
>
> ***
>
> Q: …You were never terminated from work from your job at the Lancaster Central School District, correct?
> A: Correct.[13]

***The Plaintiff's Job Performance:***

16. The Plaintiff was responsible for among other duties, entering the payroll for the Transportation Department employees.[14] It is undisputed that the Plaintiff made numerous mistakes in the performance of her job duties – particularly in the processing of the Transportation Department's payroll.[15]

17. Because of the Plaintiff's many mistakes, the District attempted to counsel her and draft procedures to help the Plaintiff reduce or eliminate her mistakes. Mr. Mowry, the

---

[11] See, Exhibits E at page 30 (lines 3-21); J.
[12] See, Exhibit E at page 33 (lines 6-7).
[13] See, Exhibit E at page 33 (lines 8-11).
[14] See, Exhibit K.
[15] See, Exhibits E at page 91 (lines 8-15); L at paragraph 10.

5

Plaintiff's supervisor, drafted numerous counseling memoranda to the Plaintiff.[16] And Ms. Jamie Phillips, the District's Assistant Superintendent, met with the Plaintiff and Mr. Mowry to develop a payroll process that the Plaintiff could follow.[17]

18.  Despite the Defendant's effort to assist the Plaintiff, she continued to make errors in the processing of the payroll.[18]

**Hostile Work Environment Allegations:**

19.  The Plaintiff alleges various acts by the District were unlawfully discriminatory and/or retaliatory.

*Referring to Plaintiff in Third Person*

20.  For instance, the Plaintiff alleges that Mr. Mowry referred to her in the third person.[19]

21.  In her deposition testimony, however, the Plaintiff conceded that Mr. Mowry only did so on one occasion – and on a date which she could not recall.[20]

*Office Lunch / Coffee Runs*:

22.  The Plaintiff also alleges that Mr. Mowry excluded her from a single office lunch at the Olive Garden.[21] But in her deposition testimony, the Plaintiff admitted that Mr. Mowry

---

[16] See, Exhibits E at page 91 (lines 18-22), L at paragraph 11; M-R.
[17] See, Exhibits E at page 92 (lines 4-10; 18-23); page 93 (lines 1-15); L at paragraph 12; S.
[18] See, Exhibits L at paragraph 13; T-Y.
[19] See, Exhibit C at paragraph 16.
[20] See, Exhibit E at page 98 (lines 9-14).
[21] See, Exhibit C at paragraph 17.

6

had -- in fact -- invited the Plaintiff to an office lunch in 2014, and that she could not identify a day on which everyone in the Transportation Department except her went to lunch together.[22]

23. The Plaintiff also alleges that Mr. Mowry excluded her from getting coffee when an employee went to a local coffee shop and brought back coffee for co-workers.[23] During her deposition testimony, however, the Plaintiff admitted that she had no evidence that Mr. Mowry told anyone to exclude her from getting coffee.[24] And the Plaintiff conceded that she could not remember how many times she was allegedly was excluded from these employee run coffee runs. But she estimated that she was excluded on only three occasions.[25]

*Mr. Mowry Allegedly Yelled at Plaintiff Twice*:

24. The Plaintiff also alleges that Mr. Mowry raised his voice to her on two occasions.[26] But, in her deposition testimony, she indicated she had no evidence to establish that Mr. Mowry did so for any discriminatory or retaliatory reason:

> Q: …Do you have any evidence that [Mr. Mowry] made that statement because of your gender?
> A: No.
>
> Q: Okay. Do you have any evidence that he made that statement because of your age?
> A: No.
>
> Q: Okay. Do you have any evidence that he made that statement because of any complaint you would have made to the district or to the EEOC?
> A: ***I don't know why he said that.***[27]

---

[22] See, Exhibit E at pages 101 (lines 8-23) 102 (lines 1-23) 103 (lines 19-23) 104 (lines 1-3).
[23] See, Exhibit C at paragraph 17.
[24] See, Exhibit E at pages 104 (lines 4-23), 105 (lines 1-23), 106 (lines 1-23), 107 (lines 1-8).
[25] See, Exhibit E at page 104 (lines 14-18).
[26] See, Exhibit C at paragraphs 18-19; 41.
[27] See, Exhibit E at pages 110 (lines 5-13), page 111 (line 5) (*emphasis added*).

25. Similarly, the Plaintiff admitted that she had no evidence of discrimination or retaliation to support her allegation that Mr. Mowry told another employee, Ms. Gina Scaglione, not to speak to the Plaintiff.[28]

*Plaintiff's Temporarily Performed Clerical Duties Away From her Desk:*

26. The Plaintiff alleges that she was assigned some clerical duties that she performed in the Transportation Department's truck bay and mechanics' area for unlawful reasons.[29] However, the Plaintiff testified during her deposition that she had no evidence that Mr. Mowry asked her to perform clerical duties in the mechanics' office for any discriminatory or retaliatory reason:

> Q: Okay. And do you have any evidence that Mr. Mowry assigned you to work back in the mechanic's office because of your gender?
> A: ***I don't know why he put me back there.***[30]

27. Mr. Mowry stated, under oath, that he assigned the Plaintiff certain clerical duties for a portion of her work day in the garage area because there were document / clerical tasks related to maintenance records and the shredding of outdated records that needed to be performed by her in those areas.[31]

28. It is also undisputed that the Defendant provided the Plaintiff with protective clothing and equipment while she was working in the garage area.[32]

---

[28] See, Exhibit E at pages 112 (line 4-23), 113 (line 1-5).
[29] See, Exhibit C at paragraphs 29-32; 44.
[30] See, Exhibit E at pages 137 (lines 22-23) and 138 (lines 1-2). (*emphasis added*).
[31] See, Exhibit L at paragraph 18-23.
[32] See, Exhibits E at pages 139 (lines 7-23), 140 (lines 1-7), 143 (lines 16-23), 144 (lines 1-23), 145 (lines 1-4).

8

*The Plaintiff's Desk/Workspace:*

29. The Plaintiff alleges that Mr. Mowry acted with discriminatory or retaliatory intent when he opened an envelope addressed to her, searched for a record in her desk, and tilted the screen on the computer she used at work.[33]

30. The Plaintiff admitted, however, that she did not know if any envelope addressed to her had actually even been opened by someone else – let alone by Mr. Mowry:

> Q: …So you don't know who, if anyone, opened [the envelope], correct?
> A: Correct. [34]

31. Mr. Mowry denied under oath that he opened any sealed envelope addressed to the Plaintiff.[35]

32. It is also undisputed that Plaintiff does not know who tilted her computer monitor downward or why the monitor was tilted.[36] It is also undisputed that the Plaintiff's computer functioned properly, and that she was able to perform her duties without issue on the day her monitor was tilted downward.[37]

33. The Plaintiff also alleges that her desk drawers were opened on one unknown date when she arrived at work.[38]

34. But, the Plaintiff admitted that she did not know who went into her desk or why someone went into her desk.[39]

---

[33] See, Exhibit C at 35 and 39.
[34] See, Exhibit E at page 171 (lines 12-14).
[35] See, Exhibit F at paragraph 35.
[36] See, Exhibit E at pages 150 (lines 21-23), 151 (lines 1-2).
[37] See, Exhibit E at page 153 (lines 5-8).
[38] See, Exhibit C at paragraph 35.
[39] See, Exhibit E at pages 156 (lines 22-23), 157 (lines 1-3).

9

35. In contrast to the Plaintiff's admissions that she did not know what had occurred when she was absent, Mr. Mowry provided testimony that on days on which the Plaintiff was absent from work, he had to access files in or on the desk at which the Plaintiff worked. Mr. Mowry stated under oath that he did not intentionally disrupt the desk or the items on the desk used by the Plaintiff on these occasions.[40] Therefore, it is undisputed that Mr. Mowry did not intentionally disrupt the Plaintiff's work area when he had to access the files from the Plaintiff's desk or computer.[41]

*Newspaper Article on a Table for One Day:*

36. The Plaintiff alleges in her Amended Complaint that in April 2014, a newspaper article and a picture of the Plaintiff were posted in the breakroom and defaced.[42]

37. The Plaintiff testified, however, that she did *not* recall what was written on the picture, admitted that she *"didn't really read it,"* and that the article and picture were on a table in the mechanics' break room for less than 24 hours – and not posted as she alleges in her Amended Complaint.[43]

38. Moreover, it is undisputed that the Plaintiff did *not* complain to the District about the article and/or picture being on a table for several hours on one day in the mechanics' break area.[44]

39. Notably, the Plaintiff also admitted that she was *not* upset by the newspaper article and picture being present on the table in the break room.[45]

---

[40] See, Exhibit L at paragraph 27.
[41] See, Exhibit L at paragraphs 26-28.
[42] See, Exhibit C at paragraph 42.
[43] See, Exhibit E at pages 178 (lines 14-23); 179 (lines 1-20).
[44] See, Exhibit E at page 180 (lines 3-6).

10

*Doctor's Appointment:*

40. The Plaintiff alleges that Mr. Mowry once told her to schedule a doctor's appointment for another time.[46]

41. In her deposition testimony, however, the Plaintiff admitted that Mr. Mowry merely asked her if it was possible to schedule one medical appointment outside of the Plaintiff's work hours.[47]

42. The Plaintiff also conceded that Mr. Mowry did ***not*** deny her time off to attend this medical appointment in February 2013.[48]

43. The Plaintiff's testimony agrees with Mr. Mowry's sworn statement that he granted the Plaintiff time off to attend her medical appointment in February 2013.[49]

44. The Plaintiff also testified that she did not recall if she filed a complaint of discrimination or retaliation with the Defendant regarding Mr. Mowry's asking her if she could reschedule this single medical appointment to a time outside of her work hours.[50]

***Age Discrimination Allegations:***

45. The Plaintiff alleges that "younger employees were allowed to come into work late, while older employees were disciplined for tardiness."[51]

---

[45] See, Exhibit E at pages 181 (lines 6-23); 182 (line 1).
[46] See, Exhibit C at paragraph 22.
[47] See, Exhibits E at pages 119 (lines 2-23); 120 (lines 1-23); 121 (lines 1-23); 122 (lines 1-19); Z.
[48] See, Exhibit E at p. 122 (lines 16-19).
[49] See, Exhibit L at paragraphs 14-15.
[50] See, Exhibit E at page 121 (lines 14-17).
[51] See, Exhibit C at paragraph 24.

11

46. The Plaintiff admitted at her deposition testimony, however, that she was never disciplined for being tardy:

> Q: …Mrs. Refermat, were you ever disciplined for being tardy?
> A: No. [52]

47. The Plaintiff also alleges that Mr. Mowry gave younger bus drivers rides to the bus garage to their buses, and once offered to wash a bus driver's bus. [53]

48. The Plaintiff admitted during her deposition testimony however, that she was never asked to wash a bus,[54] was not a bus driver, and that she was not even licensed to drive a school bus. [55]

49. Mr. Mowry denied, under oath, that he considered employees' ages in making work assignments or disciplinary decisions. [56]

*FMLA Leave Request:*

50. The Plaintiff alleges in her Amended Complaint that she applied for leave under the Family and Medical Leave Act in 2014, and that she was forced to resubmit her request a second time.[57]

51. In her deposition testimony, however, the Plaintiff testified that she was permitted to take leave under the FMLA after she complied with the Defendant's request to provide

---

[52] See, Exhibit E at page 122 (lines 20-23).
[53] See, Exhibit C at paragraphs 25-26.
[54] See, Exhibit E at page 54 (lines 11-18).
[55] See, Exhibit E at page 54 (lines 8-10).
[56] See, Exhibit F at paragraphs 16-17.
[57] See, Exhibit C at paragraph 46.

12

additional information from her daughter's physician in accordance with the Defendant's FMLA and Leave policies.[58]

*New Phone System in Transportation Department:*

52. The Plaintiff alleges in her Amended Complaint that Mr. Mowry had all incoming calls directed to the Plaintiff's phone line after a new telephone system was installed in the Transportation Department in January 2015.[59]

53. The Plaintiff admitted, however, that other employees continued to have direct telephone numbers after the new telephone system was installed, that she only had to answer those telephone calls for one and a half weeks, and that the phone system was then changed so that everyone received his or her own calls.[60]

54. The Plaintiff also admitted that she did **not** complain to the Defendant about the calls ringing on her phone as being discriminatory or retaliatory.[61]

55. The Plaintiff also testified that she did not have any evidence that Mr. Mowry acted with any discriminatory or retaliatory intent regarding the phone lines:

> Q: …Do you know if Mr. Mowry considered your age when he made this decision [to direct calls to her line]?
> A: ***I don't know why he did it.***[62]

56. Mr. Mowry denied that he had all of the calls directed to the Plaintiff's phone line, and instead noted that the general phone number for the Transportation Department rang at the Plaintiff's desk because was the only Senior Clerk Typist in the Transportation Department.[63]

---

[58] See, Exhibits E at page 187 (lines 7-23); 188 (lines 1-13); AA-BB.
[59] See, Exhibits C at paragraph 47.
[60] See, Exhibit E at pages 188 (lines 14-23); 189 (lines 1-23); 190 (lines 1-19).
[61] See, Exhibit E at pages 190 (lines 20-23); 191 (lines 1-8).
[62] See, Exhibit E at page 190 (lines 11-13) (emphasis added).
[63] See, Exhibit L at paragraphs 36-37.

*Computer Files:*

57.     In her Amended Complaint, the Plaintiff alleges that Mr. Mowry falsely accused her of not knowing how to move or save files on a computer. [64]

58.     The Plaintiff, however, admitted that she did not know why Mr. Mowry told her that she did not know how to move or save files on the computer. [65]

59.     And the Plaintiff also admitted that she saved at least one file on her computer's desktop – meaning Mr. Mowry was not able to access this file via the Defendant's computer network. [66]

60.     Mr. Mowry stated, under oath, that he asked the Plaintiff where she was storing computer files to which he needed access because he was having difficulty finding those files. [67]

*Snow Day:*

61.     The Plaintiff alleges in her Amended Complaint that she was the only Transportation Department employee not called into work on a snow day on February 13, 2015.

62.     The Plaintiff testified in her deposition that she did not know why she was not called into work on that day, and that she eventually decided against pursuing a grievance regarding her not being called into work on February 13, 2015. [68]

63.     Mr. Mowry testified that the Plaintiff was not the only employee not called into work on the February 13, 2015 snow day. Bus drivers, for instance, were also not called in

---

[64] See, Exhibit C at paragraph 33.
[65] See, Exhibit E at pages 147 (lines 9-23); 197 (lines 7-16).
[66] See, Exhibit E at pages 195 (lines 14-23); 196 (lines 1-23); 197 (lines 1-16).
[67] See, Exhibit F at paragraph 24-25.
[68] See, Exhibit L at pages 199 (lines 16-23); 200 (lines 1-23); 201 (lines 1-14).

because there was no need for them to work that day. It is also undisputed that no other Senior Clerk Typist was called into work in the Transportation Department on that day. [69]

*Alleged Exclusion from Meetings:*

64. The Plaintiff alleges in her Amended Complaint that she was excluded from certain meetings by Mr. Mowry, and that such exclusion amounted to unlawful discrimination or retaliation. [70]

65. The Plaintiff testified, however, that she did not know why Mr. Mowry excluded her from a meeting at which the Transportation Department's door locks and identification badges were discussed. [71]

66. Mr. Mowry stated under oath that he did not invite the Plaintiff to a January 2015 meeting regarding the new door locks and identification badges because the Plaintiff's start time was after the doors had already been unlocked by employees with earlier start times, meaning there was no need for her to attend this meeting. [72]

**Outside Investigators Investigated the Plaintiff's Claims, And Found Them To Be Meritless:**

67. Each of the Plaintiff's formal complaints of discrimination and retaliation to the Defendant were investigated by the Defendant utilizing outside independent investigators.

---

[69] See, Exhibit L at paragraphs 38-39.
[70] See, Exhibit C at paragraph 48.
[71] See, Exhibit E at pages 191 (lines 18-23); 192 (lines 1-23); 193 (lines 1-3).
[72] See, Exhibit L at paragraphs 29-31.

15

68.  The Plaintiff's first formal complaint in May 2014 was fully investigated by Sara Visingard, Esq. a lawyer who practices employment law. Ms. Visingard concluded that *"Ms. Refermat has not raised... any specific conduct by Mr. Mowry or any other District employee or official, which is discriminatory in nature or harassing on the basis or any protected category... Moreover, Ms. Refermat has not alleged, nor am I able to decipher, any retaliatory action taken by Mr. Mowry or another District employee or official against Ms. Refermat."*[73]

69.  The Plaintiff's later complaint, dated March 25, 2015, was investigated by Marnie Smith, Esq., a lawyer who practices employment law. Ms. Smith also found that there was no factual basis for the Plaintiff's allegations of discrimination or retaliation.[74]

***Plaintiff Admitted that She Wanted Mr. Mowry Terminated:***

70.  The Plaintiff admitted during her deposition testimony that she talked openly about wanting Mr. Mowry terminated from his employment with the Defendant, and that she had discussions with other employees and her family about her desire to see this occur.[75]

***Constructive Discharge Allegation:***

71.  The Plaintiff alleges in her Amended Complaint that she "was forced to retire from her position on or about April 8, 2015."[76]

---

[73] See, Exhibit CC at page 2.
[74] See, Exhibit DD.
[75] See, Exhibit E at pages 76 ((lines 20-23) and 77 (lines 1-18).
[76] See, Exhibit C at paragraph 53.

72. It is undisputed, however, that the Plaintiff sought other employment with Southwest Airlines – complete with numerous employee benefits such as free travel for her and her family – well in advance of the date on which the Plaintiff alleges she was "forced to retire."[77]

73. It is also undisputed that the Plaintiff learned that she was being hired by Southwest Airlines in March 2015 – just before she notified the Defendant of her intent to retire from her employment with the District:

> Q: ...So you were aware that you had the job with Southwest Airlines when you put in your resignation to the District on March 26th, correct?
> A: Correct.[78]

74. It is also undisputed that the Plaintiff did not make any required internal complaint of discrimination or retaliation in the weeks prior to submitting her letter of retirement from the District on March 26, 2015.[79]

75. The Plaintiff's notice of her retirement was dated March 26, 2015, and announced the Plaintiff would be retiring weeks later – on April 8, 2015.[80]

76. Retiring from her employment with the District enabled the Plaintiff to collect her New York State pension from her work with the Defendant while also working part-time for Southwest Airlines and traveling for free across the country.[81]

---

[77] See, Exhibit E at pages 18 (lines 4-15), 19 (lines 8-23), 20 (lines 1-17), 51 (lines 12-23).
[78] See, Exhibit E at page 203 (lines 3-7).
[79] See, Exhibit E at page 202 (lines 2-17).
[80] See, Exhibit E at page 49 (lines 609); EE.
[81] See, Exhibit E at pages 17 (lines 21-23); 18 (lines 1-23); 19 (lines 1-23); 20 (lines 1-23); 21 (lines 1-23); 22 (lines 1-23); 23 (lines 1-8).

77.    For all of the foregoing reasons, the Defendant respectfully requests that the Court grant the Defendant's motion for summary judgment, and grant other and further relief as the Court may deem just and proper.

Dated: May 5, 2017
       Buffalo, New York

                                            */s/ Brendan P. Kelleher*
                                            **Harris Beach, PLLC**
                                            (Brendan P. Kelleher, Esq.
                                            Of Counsel)
                                            ***Attorneys for Defendant***
                                            ***Lancaster Central School District***
                                            Larkin at Exchange; Suite 1000
                                            726 Exchange Street
                                            Buffalo, New York  14210
                                            716-200-5119

274160 3076376